66

JOHN J. MILLER, Plaintiff and Appellant, v. CASCADE NORTHERN COMPANY and GARY L. YORK, Defendants and Respondents.

No. 14129.
Submitted Feb. 9, 1979.
Decided March 13, 1979.
Rehearing Denied April 12, 1979.
592 P.2d 156.

Leonard J. Haxby, Butte, for plaintiff and appellant.

John N. Radonich, argued, Anaconda, for defendants and respondents.

Gary L. York pro se.

MR. JUSTICE HARRISON delivered the opinion of the Court.

Plaintiff, John J. Miller, brought this action in the District Court of the Second Judicial District, Silver Bow County seeking specific performance of a contract between Miller and defendant Gary L. York. In the alternative he sought damages. Trial began on June 20, 1977, before the Honorable James D. Freebourn, sitting without a jury, and resulted in a judgment for defendants. Plaintiff appeals.

On April 21, 1976, the Anaconda Company contracted with Cascade Northern Company for the demolition of the old Domestic Manganese Plant in Butte, Montana. On May 28, 1976, Cascade Northern contracted with Gary L. York whereby Cascade Northern agreed to pay for blasting the stack and the brick foundations. York, as subcontractor, agreed to furnish all supervision, labor and materials, and perform work on the demolition for the right to receive one half the net salvage value of any reclaimed material. York was authorized to sell certain salvageable materials and required to keep a daily record of such transactions.

York began work on the contract on or about June 1, 1976, but progressed very slowly because of the lack of proper equipment. On June 23, Larry Ladum of Cascade Northern traveled to Butte from Seattle to end the contract and advise York that he was to make no further sales of any salvageable materials. For York's agreement to surrender any rights he may have had under the original contract, Landum agreed to pay him 5 percent of the net proceeds received by Cascade Northern from the sale of salvageable materials by York's successor, Ron Holman.

Testimony adduced at trial indicates York understood that his authority to sell materials had been terminated at the June 23 meeting.

Nevertheless, York continued to visit the job site after Ladum's return to Seattle. On July 3, York met with plaintiff Miller in the lounge of the Ramada Inn in Butte. They signed a purported contract for the sale of the trestle, sheds, and other salvageable materials from the plant site. The materials were to be delivered to Miller's residence in Jefferson County. Miller paid York $500 and, approximately one week later, York delivered some siding to Miller's property.

On July 14, 1976, Ladum returned to Butte to pay York $2500 as an advance on the June 23 agreement. The two parties signed an agreement to cancel all sales that York had made in violation of this agreement. In spite of this, York contacted Miller again and, after receiving another $500 from him, delivered some more material to his residence. Testimony indicated that the total value of the materials received by Miller exceeded the $1000 he paid for them. It also appears that the materials actually delivered to Miller were not the materials subject of the original contract between York and Cascade Northern.

The determinative question in this appeal is whether any type of agency relationship existed between York and Cascade Northern at the time York signed the agreement with Miller such that Miller can enforce the agreement against Cascade Northern. We find that no such relationship existed.

According to statute, "[a]n agency is either actual or ostensible." Section 2-104, R.C.M.1947, now section 28-10-103 MCA. "An agency is actual when the agent is really employed by the principal." Section 2-105, R.C.M.1947, now section 28-10-103 MCA. In the instant case, York was, at all times, acting as an independent contractor pursuant to the express terms of his contract with Cascade Northern. No actual agency existed at any time.

The question then becomes whether an "ostensible agency" existed between York and Cascade Northern. "An agency is ostensi-

ble when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Section 2-106, R.C.M.1947, now section 28-10-103 MCA. "[T]o create liability on the theory of ostensible agency the party sought to be held as principal must by reason of some act on his part have led the other party to believe that an agency existed even though no agency actually existed." *Elkins v. Husky Oil* (1969), 153 Mont. 159, 168, 455 P.2d 329, 333.

In this case, we find no act or conduct on the part of Cascade Northern holding York out as its agent. Without this, there can be no ostensible agency between York and Cascade Northern.

The judgment of the District Court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and SHEEHY concur.