No. 97-364

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 42


SUNSET POINT PARTNERSHIP,

Plaintiff and Appellant,

v.

STUC-O-FLEX INTERNATIONAL, INC., GREG WOLSTEIN,
d/b/a STUC-O-FLEX SYSTEMS; and MIKE MELTON AND
DAN FISCHER, d/b/a MELTON FISCHER CONSTRUCTION,

Defendants and Respondents.



APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Shelly F. Brander; Kaufman, Vidal & Hileman, P.C.;
Kalispell, Montana

For Respondents:

Kenneth E. O'Brien; Hash & O'Brien, P.L.L.P.;
Kalispell, Montana  (for Stuc-O-Flex International, Inc.)



Submitted on Briefs: December 23, 1997

Decided: February 24, 1998
Filed:


_____
Clerk


Justice Jim Regnier delivered the opinion of the Court.

¶1    In August 1994, plaintiff and appellant Sunset Point Partnership filed an action in the District Court for the Eleventh Judicial District in Flathead County against Stuc-O-Flex International, Inc., and Greg Wolstein, d/b/a Stuc-O-Flex Systems, as well as against Mike Melton and Dan Fischer, d/b/a Melton Fischer Construction.  Sunset Point, a condominium developer, brought suit against the named defendants seeking to recover damages incurred when problems with the exterior surface of certain condominium units developed.  In its

complaint, Sunset Point alleged counts for breach of contract, breach of warranty, indemnity, negligence, and strict liability in tort against the defendants.

¶2    Defendants Melton and Fischer filed a motion for summary judgment on July 17, 1996, as did Stuc-O-Flex International, Inc.  On September 5, 1996, Sunset Point filed a motion for leave to amend its complaint to add Perma-Chink Systems, Inc., as an additional defendant.  In an October 15, 1996, order, the District Court denied Sunset Point's motion to amend the complaint and granted Stuc-O-Flex, Inc.'s, motion for summary judgment.  The District Court additionally granted partial summary judgment in favor of Melton and Fischer. It is from that portion of the District Court's order denying its motion to amend the complaint to add an additional defendant, and granting Stuc-O-Flex, Inc.'s, motion for summary judgment, that Sunset Point presently appeals.   For the reasons stated below, we affirm.

¶3    The sole dispositive issue on appeal is whether the District Court erred in granting Stuc-O-Flex, Inc.'s, motion for summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

¶4    On November 7, 1989, Sunset Point entered a contract with Melton and Fischer, hiring them to act as general contractors for a condominium project located on Flathead Lake, south of Bigfork, Montana.  On April 3, 1990, Melton and Fischer executed a construction subcontract with Wolstein, d/b/a Stuc-O-Flex Systems, pursuant to which Wolstein was to apply Stuc-O-Flex, a synthetic stucco product, to the exterior surface of the condominiums.

¶5    In 1990, Wolstein purchased the Stuc-O-Flex product he subsequently applied to Sunset Point's condominiums from manufacturer and seller, Perma-Chink Systems, Inc.   In October 1991, Stuc-O-Flex International, Inc., incorporated and agreed to assume Perma-Chink's assets and liabilities.

¶6    When construction was completed, Sunset Point sold the condominium units to various homeowners.  Sometime prior to July 1991, the exterior surface of the condominiums developed problems, and the Sunset Point Homeowners contacted Sunset Point and demanded repairs.  Sunset Point tendered the homeowners' demands to the defendants. Defendants rejected Sunset Point's tender.  Sunset Point then hired architect Raymond Cortner to inspect the condominiums.  In June 1994, Sunset Point spent $79,365.50 on necessary repairs.

¶7    On August 23, 1994, Sunset Point filed suit against Stuc-O-Flex, Inc., and Wolstein, d/b/a Stuc-O-Flex Systems, as well as against Melton and Fischer, d/b/a Melton Fischer Construction, seeking to recover the $79,365.50 in costs incurred repairing the condominiums.  Wolstein defaulted on January 19, 1995, and Stuc-O-Flex, Inc., filed a motion for summary judgment on May 23, 1995.  In a December 11, 1995, order, the District Court denied Stuc-O-Flex, Inc.'s, motion on the basis that the record contained insufficient facts upon which it could premise a grant of summary judgment.

¶8    Following completion of additional discovery and supplementation of the record, Stuc-O-Flex, Inc., filed a second motion for summary judgment on July 17, 1996.  Melton and Fischer similarly filed a motion for summary judgment on July 17, 1996. On September 5, 1996, Sunset Point filed a motion for leave to file an amended complaint adding Perma-Chink as an additional defendant.

¶9 On October 15, 1996, the District Court issued an order granting Stuc-O-Flex, Inc.'s, motion for summary judgment, and denying Sunset Point's motion for leave to file an amended complaint. The court additionally granted Melton and Fischer's motion for summary judgment in part, and denied it in part. Sunset Point subsequently reached a settlement with Melton and Fischer with respect to all claims, and on January 7, 1997, stipulated to Melton and Fischer's dismissal from the case. On April 29, 1997, Sunset Point obtained a default judgment against Greg Wolstein.

¶10 On May 19, 1997, Sunset Point filed its notice of appeal from the District Court's October 15, 1996, order granting Stuc-O-Flex, Inc.'s, motion for summary judgment and denying Sunset Point's motion to amend the complaint.

## STANDARD OF REVIEW

¶11 This Court's standard of review in appeals from summary judgment rulings is de novo. Treichel v. State Farm Mut. Auto. Ins. Co. (1997), 280 Mont. 443, 446, 930 P.2d 661, 663. (citing Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). This Court reviews a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. Treichel, 280 Mont. at 446, 930 P.2d at 663 (citing Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903).

¶12 In proving that summary judgment is appropriate:
> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determinations made by the district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903.

¶13 Moreover, the "moving party has the burden of showing a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." Kolar v. Bergo (1996), 280 Mont. 262, 266, 929 P.2d 867, 869.

## DISCUSSION

¶14 Did the District Court err in granting Stuc-O-Flex Inc.'s, motion for summary judgment?

¶15 In its October 15, 1996, order, the District Court granted summary judgment in Stuc-O-Flex, Inc.'s, favor with respect to each of the five counts asserted against it in Sunset Point's complaint. In so doing, the court concluded the evidence of record did not support Sunset Point's assertion that Stuc-O-Flex, Inc., could be held vicariously liable for Wolstein's actions pursuant to a theory of either actual or ostensible agency and, therefore, held Stuc-O-Flex, Inc., was entitled to summary judgment on the claims leveled against it for breach of contract, breach of warranty, and negligence. The District Court additionally granted Stuc-O-Flex, Inc.'s, motion for summary judgment with respect to Sunset Point's claim for indemnity, concluding that Sunset Point could in no event establish a claim for

liability against Stuc-O-Flex, Inc.  Finally, the District Court ordered summary judgment in Stuc-O-Flex, Inc.'s, favor with respect to Sunset Point's claim for strict liability in tort, concluding there existed no evidence of record supporting Sunset Point's assertion that the Stuc-O-Flex product was in any way defective.

¶16  As it is potentially dispositive of Sunset Point's claims for breach of contract, breach of warranty, and partially dispositive of its claim for negligence, we turn first to the question
of whether the District Court erred in concluding the evidence of record did not support Sunset Point's assertion that Stuc-O-Flex, Inc., could be held vicariously liable for Wolstein's actions pursuant to a theory of either actual or ostensible agency, and that there existed no genuine issues of material fact precluding summary judgment.
A.   Agency

¶17  In Count I of its complaint, Sunset Point asserts that it contracted with Wolstein and Melton Fischer for the application of Stuc-O-Flex to the exterior walls of its condominiums, and alleges "[d]efendants Wolstein and Melton Fischer" breached that contract by failing to "do all work in a first-class and workmanlike manner and to the entire satisfaction of the Owner, Contractor and Architect."  In Count II of its complaint, Sunset Point alleges breach of warranty, asserting that "defendants Wolstein and Melton Fischer" breached the fifteen-year warranty included in the construction subcontract.  Finally, in Count IV of its complaint, Sunset Point asserts the "[d]efendants were negligent in the manner in which they applied stuc-o-flex to the exterior walls."

¶18  In its motion for summary judgment, Stuc-O-Flex, Inc., argued that Sunset Point's claims for breach of contract, breach of warranty, and negligence contained no allegations of wrongdoing on the part of, or representations by, Stuc-O-Flex, Inc., and accordingly asserted it was entitled to summary judgment on each of those three counts.  In response, Sunset Point maintained that Wolstein was Stuc-O-Flex, Inc.'s, agent, and asserted the corporation could therefore be held vicariously liable for Wolstein's actions.

¶19  In addressing Sunset Point's claim for breach of contract, the District Court first noted that "[t]he complaint fails to contain any allegations of agency and this issue was raised by [Sunset Point] for the first time more than two years after the institution of suit" and, therefore, concluded the question of agency was not properly before that court.  The court continued with its analysis, however, and concluded that the evidence did not, in any event, "support a claim of either actual or ostensible agency" between Wolstein and Stuc-O-Flex, Inc., and on that basis granted Stuc-O-Flex, Inc.'s, motion for summary judgment as to Sunset Point's claims for breach of contract and breach of warranty. The District Court similarly ordered summary judgment in Stuc-O-Flex, Inc.'s, favor with respect to Sunset Point's allegations of negligence, specifically concluding that "there is no evidence establishing or even raising a question of fact whether Wolstein was an agent for Stuc-O-Flex International, Inc." and that the corporation thus "had no responsibility for the manner in which Wolstein applied the product."

¶20  On appeal, Sunset Point argues the District Court erred in determining that no genuine issue of material fact existed regarding the presence of an ostensible agency between Wolstein and Stuc-O-Flex, Inc.  Sunset Point urges there exists at least enough evidence of record to create a question of fact regarding the presence of such an agency relationship.  For example, Sunset Point points to those portions of Sunset Point partner Dan Averill's deposition testimony in which he explains that he thought applicators were certified by the manufacturer and that he believed Wolstein was an agent of Stuc-O-Flex, Inc..  Sunset Point also relies on Averill's testimony regarding a sales pitch he received from a Stuc-O-Flex, Inc., representative as evidence of ostensible agency.  Sunset Point next points to the fact that

Wolstein signed the construction subcontract as "Stuc-O-Flex Systems by Greg Wolstein" and testified that he notified Perma-Chink of his intent to use the name "Stuc-O-Flex Systems" and Perma-Chink did not object. Finally, Sunset Point notes that Stuc-O-Flex, Inc.'s, president, Rich Dunstan, testified that Stuc-O-Flex must be purchased through the company which has a training program for applicators. In light of the foregoing evidence of record, Sunset Point argues, there exists a genuine issue of material fact as to whether Stuc-O-Flex, Inc., by want of ordinary care, allowed third parties to believe that an applicator like Wolstein was acting as an agent for the company.

¶21 With respect to agency, 28-10-103, MCA, explains that:
An agency is either actual or ostensible. An agency is actual when the agent is really employed by the principal. An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent who is not really employed by him.

¶22 Pursuant to this statutory definition of ostensible agency, it must be the principal, not the agent, who "intentionally or by want of ordinary care causes a third person to believe another to be his agent." See also Miller v. Cascade Northern Co. (1979), 181 Mont. 66, 69, 592 P.2d 156, 158 (recognizing liability under theory of ostensible agency may exist only where the alleged principal, "by reason of some act on his part," leads another to believe that an agency relationship existed.) (Quoting Elkins v. Husky Oil (1969), 153 Mont. 159, 168, 455 P.2d 329, 333). Furthermore, we have recognized that "[t]he belief that another is an agent must be reasonable." Larson v. Barry Smith Logging, Inc. (1994), 267 Mont. 444, 447, 884 P.2d 786, 788.

¶23 In the present case, we must determine whether the District Court erred in concluding there existed no question of fact as to whether Stuc-O-Flex, Inc., led Sunset Point to believe that Wolstein was acting as its agent. In so doing, we turn first to Sunset Point's assertion that because Averill believed Wolstein was Stuc-O-Flex, Inc.'s, agent, and because he thought all applicators were certified by the manufacturer, Wolstein was Stuc-O-Flex, Inc.'s, ostensible agent. Averill's deposition testimony reveals that he never met, nor dealt directly, with Wolstein, and suggests no act on the part of Stuc-O-Flex, Inc., which could have led him to reasonably believe that Wolstein was acting as Stuc-O-Flex, Inc.'s, agent. That Averill received a sales pitch from a Stuc-O-Flex, Inc., representative does not suggest the corporation was attempting to hold Wolstein out as its agent. Moreover, we conclude testimony by Stuc-O-Flex, Inc.'s, president, Rich Dunstan, explaining that the Stuc-O-Flex product is purchased through the company which has a training program for applicators, fails to create a factual issue on the question of ostensible agency. The record clearly indicates that Wolstein never requested or received any such training, and additionally indicates that the Stuc-O-Flex product is available to consumers, not only through the company, but also through sales representatives and dealers.

¶24 Sunset Point also argues there exists a genuine issue of material fact with respect to the presence of an ostensible agency between Wolstein and Stuc-O-Flex, Inc., because Wolstein signed the construction subcontract as "Stuc-O-flex Systems by Greg Wolstein" and testified that Perma-Chink did not object to his use of the name "Stuc-O-Flex Systems." We have previously held, however, that mere use of an alleged principal's name, without some other "holding out," does not, by itself, create an ostensible agency. Elkins v. Husky Oil Co. (1969), 153 Mont. 159, 168, 455 P.2d 329, 333.

¶25 Based on the foregoing, we conclude, as did the District Court, that the evidence of record fails to raise a question of fact regarding the presence of an ostensible agency relationship between Wolstein and Stuc-O-Flex, Inc. Accordingly, we affirm the District Court's decision granting summary judgment in Stuc-O-Flex, Inc.'s, favor with respect to

Sunset Point's claims for breach of contract and breach of warranty.

B.   Negligence

¶26  We note that the District Court granted Stuc-O-Flex, Inc.'s, motion for summary judgment with respect to Sunset Point's claim for negligence on the additional basis that Stuc-O-Flex, Inc., "did not exist as a corporation when the contract was entered" and that Wolstein purchased the Stuc-O-Flex product he used on the Sunset Point condominiums from Perma-Chink, which was not named as a defendant to this action. The court additionally noted that Stuc-O-Flex, Inc., did not sell or endorse the "'sandwich' of mesh, protective sealant and stuc-o-flex" used in application and that Wolstein neither requested nor received instructional material regarding application of the product in relation to this project.

¶27  On appeal, Sunset Point argues the District Court ignored its allegations of direct negligence on the part of Stuc-O-Flex, Inc., in selecting Wolstein as an applicator, failing to provide adequate training, supervision, and instruction.  We note that Count IV of Sunset Point's complaint alleges negligence only on the part of the defendants "in the manner in which they applied stuc-o-flex," and contains no allegations of direct negligence on the part of Stuc-O-Flex, Inc.  Moreover, Sunset Point has failed to point to any evidence of record which would suggest the presence of a duty on the part of Stuc-O-Flex, Inc., to train or supervise Wolstein.  Accordingly, we affirm the District Court's decision granting summary judgment in Stuc-O-Flex, Inc.'s, favor with respect to Sunset Point's claim for negligence.

¶28  In light of our conclusion that Stuc-O-Flex, Inc., would, in any event, be entitled to summary judgment on the merits with respect to Sunset Point's claim for negligence, we need not address whether the District Court erred in granting Stuc-O-Flex, Inc.'s, motion for summary judgment on the partial basis that it did not exist as a corporation at the time the contract at issue was entered.

C.   Strict Liability in Tort

¶29  In the fifth and final count of its complaint, Sunset Point alleges that "[t]he Stuc-o-flex application at Sunset Point Phase IV was unreasonably unsuitable for its intended purpose and thus, defective."  Sunset Point additionally asserts that its "use of the Stuc-o-flex product was in a manner reasonably foreseeable by the Defendants" and that it incurred damages "[a]s a proximate result of the defective application."

¶30  The District Court ordered summary judgment in Stuc-O-Flex, Inc.'s, favor on Sunset Point's claim for strict liability on two grounds.  First, the court noted that Sunset Point asserts only that the application of Stuc-O-Flex was defective, not that the product itself was defective.  In any event, the court next concluded, Sunset Point's "own expert, Raymond Cortner, testified that he found no defect in the Stuc-o-flex product and there is no testimony in the record to indicate that the product was defective in any manner."

¶31  On appeal, Sunset Point argues there in fact exists sufficient evidence of record to create a question of fact as to whether the Stuc-O-Flex product was defective.  For example, Sunset Point argues that deposition testimony by Raymond Cortner, an expert hired by Sunset Point to investigate the problem at the condominiums, establishes "that the Stuc-O-Flex system has a very poor track record in this geographic area, as the product may fail in as little as a week or last only a year or two."  Review of those portions of Cortner's deposition submitted on appeal, however, reveals that Cortner in fact opined there existed no defect in the Stuc-O-Flex product itself.  Instead, Cortner explained, "[t]he Stuc-O-Flex adhered to the paper and the paper let go from the core of the gypsum and the gypsum core

remained there and the paper fell off as it would when it got wet." When asked whether he had found "any problem or difficulty with the Stuc-o-flex product itself," Cortner stated that "no, [he] couldn't find anything specific."

¶32 Sunset Point additionally argues that, "[a]lthough the product may not be defective while sitting in its container, when applied to a building in its intended manner, it fails." More specifically, Sunset Point asserts that the Stuc-O-Flex product is sold as a complete "system" which includes application of the material. As the District Court noted, however, Stuc-O-Flex, Inc., did "not sell all of the component parts of the alleged 'system.'" Moreover, Cortner testified at his deposition that "stuc-o-flex is a material that is applied to another substraight, but they do not have a system, they have a material stuc-o-flex, and it is applied to anything. They don't guarantee a system." As the District Court noted, the record indicates that Wolstein did not purchase the underlying mesh and protective coating over which he applied the Stuc-O-Flex product from Stuc-O-Flex, Inc.

¶33 Thus, assuming, as did the District Court, that Sunset Point has properly alleged a claim for strict liability in tort, we hold the District Court correctly concluded the evidence of record simply does not support Sunset Point's assertion that the Stuc-O-Flex product is itself defective and that there exists no question of fact precluding summary judgment on this issue. We accordingly hold the District Court did not err in ordering summary judgment in Stuc-O-Flex, Inc.'s, favor with respect to Sunset Point's claim for strict liability in tort.

D. Motion to Amend the Complaint

¶34 Sunset Point additionally appeals from that portion of the District Court's order denying Sunset Point's motion to amend the complaint to add Perma Chink Systems, Inc., as a defendant in this case. The court denied Sunset Point's motion to amend the complaint, concluding that to allow the amendment at such a late date would be prejudicial to the defendant.

¶35 In light of our conclusion that Sunset Point has, in any event, failed to demonstrate the presence of a genuine issue of material fact in support of any of the claims contained in its complaint, whether Stuc-O-Flex, Inc., or Perma-Chink Systems, Inc., is the appropriate defendant in this case is immaterial. Accordingly, we need not address the propriety of the District Court's decision denying Sunset Point's motion to amend the complaint.

/S/   JIM REGNIER

We Concur:

/S/   WILLIAM E. HUNT, SR.
/S/   KARLA M. GRAY
/S/   W. WILLIAM LEAPHART
/S/   TERRY N. TRIEWEILER