**Patrick D. VINION; et al.,**
**Plaintiffs—Appellants,**

v.

**AMGEN INC.; et al., Defendants—**
**Appellees.**

**No. 05–36121.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 26, 2007.

Filed March 27, 2008.

A. Clifford Edwards, Esq., Edwards Law Fiem, Billings, MT, for Plaintiffs–Appellants.

Charles E. McNeil, Esq., Garlington Lohn & Robinson, PLLP, Missoula, MT, Catherine E. Stetson, Esq., Michael L. Kidney, Esq., Hogan & Hartson, LLP, Washington, DC, Aimee M. Grmoljez, Esq., Browning Kaleczyc Berry & Hoven, Helena, MT, Mark D. Gately, Esq., Hogan & Hartson, Baltimore, MD, for Defendants–Appellees.

Before: B. FLETCHER, KLEINFELD, and GOULD, Circuit Judges.

## MEMORANDUM *

Patrick D. Vinion, Richelle Vinion, Clayton H. Riddle, and Angela Riddle (collectively, "Appellants") appeal two decisions by the district court: (1) dismissal of their contract claims against Amgen Inc. and Immunex Corporation (collectively, "Companies"); and (2) summary judgment in favor of the Companies on a variety of state law tort claims. Although we have sympathy for Appellants, the law is not on their side. For the reasons set forth below, we AFFIRM both of the district court's decisions.

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Circuit Rule 36–3.

■ We affirm the district court's decision to dismiss Appellants' contract claim because it appears beyond doubt that Appellants could prove no set of facts that would entitle them to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The written agreements did not contain a promise that the Companies would provide the study drug for free indefinitely once the study ended. The district court properly considered these documents because the complaint alleged their contents and no party questioned their authenticity. *See Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir. 1994). The oral contract claim could not succeed because the parol evidence rule, *see* Mont.Code Ann. §§ 28–2–904, 28–2–905, 30–2–202, barred proof that any oral promise was made, while the statute of frauds, *see* Mont.Code Ann. § 28–2–903(a), would have made it unenforceable even if proved.

Summary judgement on Appellants' tort claims was also appropriate because a review of the evidence reveals no genuine dispute of material fact as to whether the Companies made the alleged promise. *See Scribner v. Worldcom, Inc.,* 249 F.3d 902, 907 (9th Cir.2001). Appellants' implied agency theory fails as a matter of law under either Washington or Montana law. The states use slightly different formulations of the rule, *compare, Udall v. T.D. Escrow Servs., Inc.,* 159 Wash.2d 903, 154 P.3d 882, 888 (2007), *with* Mont.Code Ann. § 28–10–103(1), but the resulting inquiry is the same, *compare Adamski v. Tacoma Gen. Hosp.,* 20 Wash.App. 98, 579 P.2d 970 (1978), *with Butler v. Domin,* 302 Mont. 452, 15 P.3d 1189 (2000), and the result in this case is the same. As the district court and the parties refer to Montana law, and the choice is not outcome-determinative, we follow suit.

■ Appellants' implied agency theory cannot succeed because there was no action or inaction by the Companies that would have led the Appellants to a reasonable belief that Dr. Whitehouse was the Companies' agent. *See* Mont.Code Ann. § 28–10–103(1); *Butler,* 15 P.3d at 1197. The only contact between the Companies and Appellants was the consent agreement they signed at the beginning of the study. The agreement says that the study is "under the direction" of their physician and says nothing to support a reasonable belief that their physician would be acting under the direction of the Companies. The Companies' agreement with the physician specified that he was an "independent contractor," and the Companies did nothing that would give him the appearance of being their agent.

Dr. Whitehouse was Appellants' personal physician before the study, he invited them to participate, and he provided care during the study at his own office, not any office provided by the Companies. *See Butler,* 15 P.3d at 1196–97. Dr. Whitehouse's statements to Appellants about "compassionate use" cannot impose liability on the Companies because he was not the Companies' actual or apparent agent (even assuming that his statements were what Appellants understood them to be). *See Sunset Point P'ship v. Stuc–O–Flex Int'l, Inc.,* 287 Mont. 388, 954 P.2d 1156, 1160 (1998). The Companies cannot be held legally liable to Appellants for promises made to other participants in a separate study conducted in California. That the Companies were inconsistent in extending post-study drugs to participants in different studies has no bearing on whether the Companies' conduct towards Appellants left them with the reasonable belief that Dr. Whitehouse was the Companies' agent.

*See also Abney v. Amgen, Inc.,* 443 F.3d 540 (6th Cir.2006); *Suthers v. Amgen Inc.,* 372 F.Supp.2d 416 (S.D.N.Y.2005).

AFFIRMED.

BETTY B. FLETCHER, Circuit Judge, dissenting:

I agree with the majority holding that Appellants' contract claims were properly dismissed by the district court because the written Study Agreement between Dr. Whitehouse and Appellee Immunex Corp., now Amgen Inc. ("Amgen"), does not require that Amgen provide the study drug free of charge to Appellants after the limited duration of the clinical trial, and because Appellants' oral contract claims are barred. It is also clear that Dr. Whitehouse was not Amgen's actual agent.

However, I disagree with the majority's conclusion that "no action or inaction" by Amgen "would have led the Appellants to a reasonable belief that Dr. Whitehouse was [Amgen's] agent." Maj. Op. at 584. It is possible that based on the record a jury could find that Amgen "intentionally or by want of ordinary care cause[d]" Appellants to believe Dr. Whitehouse to be Amgen's implied agent. *See* Mont.Code Ann. § 28–10–103(1). Because it remains an open question, for a jury to decide, whether Dr. Whitehouse had implied authority to commit Amgen to provide Appellants the study drug after the limited duration of the clinical trial, summary judgment denying Appellants' state law tort claims was inappropriate. Accordingly, I respectfully dissent.

Summary judgment cannot be affirmed when a genuine issue of material fact remains in dispute. Here, our central inquiry is whether, under Montana law, a genuine issue of material fact remains in dispute as to the question of implied agency. In *Butler v. Domin,* the Montana Supreme Court held that it is im-

proper to grant summary judgment when the principal fails to put the third party on notice as to the employment relationship between itself and the alleged agent. 302 Mont. 452, 15 P.3d 1189 (2000). Because Appellants never saw the Study Agreement before signing the Informed Consent document at the beginning of the study, the Informed Consent document was the only document that gave Amgen the opportunity to put Appellants on notice of Dr. Whitehouse's "independent contractor" status. It did not do so.

The majority notes that the Informed Consent document states that the study is "under the direction" of Dr. Whitehouse. Maj. Op. at 584 The majority then concludes that because nothing in the Informed Consent document indicates that Dr. Whitehouse would be acting under the direction of Amgen, Appellants should be on notice that Dr. Whitehouse was not Amgen's agent. However, the fact that the Informed Consent document, which Amgen drafted, is silent on the key issue of whether Dr. Whitehouse was in a position to commit Amgen cuts against the majority's conclusion.

In *C.A.R. Transp. Brokerage Co., Inc., v. Darden Restaurants, Inc.,* 213 F.3d 474 (9th Cir.2000), this court, applying California law defining ostensible agency (which is the same under Montana law; *compare* Mont.Code Ann. § 28–10–103 *with* Cal. Civ.Code § 2300), found that a frozen shrimp seller was an ostensible agent "based on the silence of the principal alone," where, as here, the principal transacts business with a party solely through the agent. In the present context, while it is true that the nature of clinical studies requires pharmaceutical companies to let the doctors deal with patients, it is incumbent upon the companies to make its role and the physician's role clear at the outset.

Instead of taking precautions to clarify that Dr. Whitehouse was not Amgen's agent, the Informed Consent document minimizes Amgen's role in the study, mentioning Amgen only in the context of discontinuing the study, as a supplier of the study drug, as the source of funding for the study, and as an authorized recipient of medical records. By way of contrast, many provisions of the Informed Consent document could have led Appellants to draw the reasonable inference that Dr. Whitehouse was the sole communicator of Amgen's position and thus its implied agent. The Informed Consent document:

1) held Whitehouse out to be "Sponsor" and "Principal Investigator;"

2) directed participants to Whitehouse (or study staff) "to explain any words or information that you do not clearly understand;"

3) directed participants to discuss costs of medical care during the experiment with Whitehouse;

4) directed participants to notify Whitehouse "as soon as possible if you decide to withdraw consent;"

5) advised that Whitehouse would notify participants if the study was discontinued and advise participants of available treatments that may be of benefit;

6) directed participants to ask all medical questions related to the study or a research related inquiry to Whitehouse, providing his phone number and pager number;

7) was signed only by the clinical trial subject, the person conducting the Informed Consent discussion, an investigator, and a witness—notably, not by Amgen.

In accord with the Informed Consent document, Appellants could rely only on their interactions with Dr. Whitehouse. In this light, Dr. Whitehouse's testimony that he thought he was in a position to communicate credibly to the patients on behalf of Amgen is critical. While he may not create apparent agency in himself, simply because Amgen transacted business with Appellants solely through him, implied agency can be found "based on the silence of the principal alone" in failing to put Appellants on notice to the contrary. *C.A.R. Transp. Brokerage Co., Inc.*, 213 F.3d 474.

In his deposition, Dr. Whitehouse stated "[I] was just passing on the information from Ann Hayes" of Amgen, and noted that he was in a good position to act as a credible conduit between Amgen and Appellants because Appellants "very much so" trusted him. In his affidavit to the district court, Dr. Whitehouse stated he "communicated [Amgen's] promise to the study participants, including Mr. Vinion and Mr. Riddle, particularly since they both inquired as to what would happen if the [study drug] proved beneficial for them; both of them communicated to me that they viewed participation in the study more favorably knowing that the drug would continue to be supplied to them if it proved to be beneficial[.]"

The record also contains letters from Dr. Whitehouse to Appellants Vinion and Riddle. Dr. Whitehouse wrote to communicate that he had been in contact with Amgen and that "[a]pparently Amgen is not going to follow through with Immunex's original verbal promise to continue drugs if it was helpful." He also offered that "[i]f I get any further word I will be happy to pass that on as quickly as I see it ..." This communication reinforces Appellants' notion that just as Dr. Whitehouse had communicated Amgen's promise, he now communicated Amgen's repudiation of that promise.

Finally, the majority states that Amgen cannot be held liable for Dr. Whitehouse's

statements that "compassionate use" in this context to mean free provision of the study drugs after the limited duration of the clinical trial. He made that statement based in part upon his knowledge of a previous Amgen trial in Southern California where Amgen did provide free drugs to trial participants indefinitely on a "compassionate use" basis at the conclusion of that trial. The majority concludes that the inconsistency in provision of free drugs after the conclusion of its trials "has no bearing on whether [Amgen's] conduct toward Appellants left them with the reasonable belief that Dr. Whitehouse was [Amgen's] agent." Maj. Op. at 584. However, to the contrary, the evidence of the Southern California trial further underscores the credibility of Appellants' belief in Dr. Whitehouse's promise that Amgen would provide the study drug free of charge to Appellants after the trial and could help lead a jury to the conclusion that his communication of that promise was an act of an implied agent.

For the foregoing reasons, I would reverse the summary judgment denying Appellants' state law tort claim and remand to the district court for further proceedings.