FILED

August 4 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0375

DA 14-0375

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 222

CAROL J. McCLUE; and DAN L. McCLUE,
individually and as husband and wife,

      Plaintiffs and Appellants,

  v.

SAFECO INSURANCE COMPANY OF ILLINOIS,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 11-712
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Natasha Prinzing Jones, Matthew B. Hayhurst, Randy J. Tanner, Boone
Karlberg P.C., Missoula, Montana

      For Appellee:

          Paul N. Tranel, John E. Bohyer, Bohyer, Erickson, Beaudette & Tranel,
Missoula, Montana

Submitted on Briefs:  May 20, 2015
Decided:  August 4, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Dan L. McClue, on behalf of himself and his deceased wife, Carol J. McClue,[1] appeals the decisions of the Twenty-First Judicial District Court excluding expert testimony and granting summary judgment to Safeco Insurance Company of Illinois. McClue raises two issues on appeal:

> *1.  Whether the District Court abused its discretion by excluding the causation testimony of Dr. John Sabow;*
>
> *2.  Whether the District Court abused its discretion by excluding the causation testimony of Dr. Decontee Jimmeh-Fletcher.*

¶2      We reverse on the first issue but affirm on the second. We reverse the entry of summary judgment and remand for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      In January 2009, Carol was involved in a serious car accident. In 2011, neurologists Sherry Reid, M.D., and Decontee Jimmeh-Fletcher, M.D., both diagnosed Carol with bulbar ALS. Carol died from the illness in 2013.

¶4      At the time of the car accident, Carol had Underinsured Motorist (UIM) insurance coverage through Safeco. After the diagnosis, McClue submitted claims to Safeco for UIM benefits for damages associated with Carol's ALS. Safeco denied those claims, taking the position that the car accident did not cause Carol to develop ALS. In 2011 and 2012, McClue commenced actions against both the driver of the other vehicle in the car

---

[1] Carol died while this action was pending. Her estate has not yet been substituted for her. We refer to the Appellants collectively as McClue.

crash—who later settled and was dismissed—and Safeco. McClue asserted that Safeco breached the insurance contract by failing to provide UIM benefits for Carol's ALS.

¶5 McClue planned to present testimony from both Dr. Jimmeh-Fletcher and John Sabow, M.D.—a neurologist McClue retained in connection with this action—at trial. Both were deposed. Dr. Jimmeh-Fletcher opined that trauma could contribute to the development of ALS, but did not state that Carol's ALS was caused by the car accident. Dr. Sabow, on the other hand, opined that the car accident caused tissue damage in Carol's cervical spine and lower brainstem and that this tissue damage was more probably than not the "proximate cause" of Carol's ALS.

¶6 After the depositions, Safeco filed motions in limine to exclude testimony from both doctors at trial. The District Court granted the motions. Safeco then moved for summary judgment because, without the expert testimony, McClue did not have admissible evidence to establish that the car crash caused Carol's ALS. Reserving the right to appeal the rulings in limine, McClue did not oppose summary judgment, and the District Court granted Safeco's motion. McClue now appeals the exclusion of expert testimony and the resulting entry of summary judgment.

**STANDARDS OF REVIEW**

¶7 The parties dispute the standard of review that applies to the District Court's exclusions of expert testimony.

¶8 Indisputably, we review an entry of summary judgment de novo. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Also indisputably, we

3

generally review an evidentiary ruling for an abuse of discretion. *Harris v. Hanson*, 2009 MT 13, ¶ 18, 349 Mont. 29, 201 P.3d 151. Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Albert*, ¶ 15. This determination is based on viewing "facts that would be admissible in evidence," M. R. Civ. P. 56(e)(1), in the light most favorable to the non-moving party, *Malpeli v. State*, 2012 MT 181, ¶ 12, 366 Mont. 69, 285 P.3d 509. Rulings on the admissibility of evidence thus sometimes implicate summary judgment.

¶9 After the District Court ruled that the proffered expert testimony was not admissible, it determined that there was no evidence to demonstrate a genuine issue of material fact. In this situation, McClue argues that our summary judgment standard should swallow the normal standard for evidentiary rulings, and that we should review the exclusion of expert testimony de novo. Safeco asserts that we should keep the standards separate and review the exclusion of expert testimony for an abuse of discretion.

¶10 Safeco finds support in *Beehler v. E. Radiological Assocs., P.C.*, 2012 MT 260, 367 Mont. 21, 289 P.3d 131. In *Beehler*, the defendants filed motions in limine to exclude expert testimony necessary for the plaintiffs to establish essential elements of their claim. The district court granted the motion. *Beehler*, ¶ 5. The defendants concurrently moved for summary judgment, arguing that, without expert testimony on essential elements of the plaintiffs' claim, judgment was appropriate as a matter of law.

4

The district court granted that motion too. *Beehler*, ¶ 6. We reviewed the district court's rulings on the admissibility of expert testimony for an abuse of discretion. *Beehler*, ¶ 17.

¶11 McClue counters with decisions suggesting that we review evidentiary rulings in the context of summary judgment de novo. *E.g.*, *Smith v. Farmers Union Mut. Ins. Co.*, 2011 MT 216, ¶ 15, 361 Mont. 516, 260 P.3d 163 ("We review evidentiary rulings made in the context of a summary judgment proceeding de novo, and need not defer to the judgments and decisions of the district court, in order to determine whether evidentiary requirements for summary judgment have been satisfied.") (citing *In re Estate of Harmon*, 2011 MT 84A, ¶ 14, 360 Mont. 150, 253 P.3d 821); *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 53, 345 Mont. 12, 192 P.3d 186 ("[I]n the context of summary judgment, a decision to categorically exclude certain evidence from consideration is not a discretionary function akin to admitting or excluding evidence at trial. Rather this determination is a conclusion of law which we must review de novo, just as we review all other aspects of the decision to grant summary judgment."); *Smith v. Burlington N. & Santa Fe Ry.*, 2008 MT 225, ¶ 41, 344 Mont. 278, 187 P.3d 639 ("[W]e have never held that evidentiary rulings going directly to the propriety of summary judgment are also reviewed for an abuse of discretion. Instead, under our case law, strict compliance with Rule 56(e) is required, and we review de novo whether the evidentiary requirements of Rule 56(e) have been satisfied."). These cases invoke de novo review primarily "in order to determine whether the evidentiary requirements for summary judgment have been satisfied." *Harmon*, ¶ 14.

¶12   In considering the correct standard to apply to the evidentiary rulings that contributed to entry of summary judgment in this case, our focus is not on whether particular evidence was appropriate for consideration by the trial court in ruling on the summary judgment motion, but on the standard by which to review the exclusion of expert testimony that left the plaintiff unable to present a prima facie case. Several points bear on our resolution of this issue.

¶13   First, in *Beehler* and other cases, we have applied an abuse of discretion standard in almost identical circumstances. *E.g.*, *Beehler*, ¶ 17; *Butler v. Domin*, 2000 MT 312, ¶¶ 10-23, 302 Mont. 452, 15 P.3d 1189. Second, in cases dating back at least seven decades, we have situated rulings on the admissibility of expert testimony within the discretion of trial courts, vowing not to disturb such rulings "in the absence of a showing of abuse." *E.g.*, *Harris*, ¶ 18; *Graham v. Rolandson*, 150 Mont. 270, 285, 435 P.2d 263, 271 (1967); *Nesbitt v. City of Butte*, 118 Mont. 84, 93, 163 P.2d 251, 256 (1945). Finally, most appeals courts apply an abuse of discretion standard to rulings on the admissibility of expert testimony even when those rulings implicate summary judgment. *See, e.g.*, *Flesner v. Bayer AG*, 596 F.3d 884, 889 (8th Cir. 2010) ("We review for abuse of discretion the district court's decision to exclude testimony for purposes of determining whether there exists an issue of material fact.") (citing *GE v. Joiner*, 522 U.S. 136, 142-43, 118 S. Ct. 512, 517 (1997) (rejecting the application of de novo review to the exclusion of expert testimony that was "outcome-determinative" to a summary judgment ruling)); *Benson v. N. Gopher Enters., Inc.*, 455 N.W.2d 444, 445-46 (Minn. 1990)

(reviewing for an abuse of discretion the exclusion of expert testimony leading to summary judgment). This is consistent with the general reasoning that, while an order granting summary judgment is reviewed de novo, "any determination underlying the order granting summary judgment is reviewed under the standard appropriate to that determination." *Avivi v. Centro Medico Urgente Med. Ctr.*, 159 Cal. App. 4th 463, 467 (2008). Most courts hold that exclusion of expert testimony, like other evidentiary rulings, is within the discretion of trial courts. *See, e.g.*, *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014).

¶14 Based on the foregoing, we will review the District Court's rulings excluding McClue's proffered expert testimony for an abuse of discretion. Following those determinations, we will review the remaining entry of summary judgment de novo. To the extent that the expert testimony ruling is based purely on an interpretation of the evidentiary rules, however, we will review that interpretation, like any other question of law, for correctness. *In re T.W.*, 2006 MT 153, ¶ 8, 332 Mont. 454, 139 P.3d 810.

### DISCUSSION

¶15 *1. Whether the District Court abused its discretion by excluding the causation testimony of Dr. Sabow.*

¶16 M. R. Evid. 702 permits "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." This rule requires testing an expert's reliability against "(1) whether the expert field is reliable, (2) whether the expert

7

is qualified, and (3) whether the qualified expert reliably applied the reliable field to the facts." *State v. Clifford*, 2005 MT 219, ¶ 28, 328 Mont. 300, 121 P.3d 489. A district court must determine whether the field is reliable and whether the expert is qualified, but "[t]he last question is for the finder of fact." *Beehler*, ¶ 35.

¶17 McClue sought to introduce Dr. Sabow as an expert witness at trial to testify that the auto accident caused Carol's ALS. Dr. Sabow is a board-certified neurologist with over forty years of experience in neurology and particular expertise in ALS. In a report and deposition, he testified that he was "convinced" that the localization of Carol's ALS symptoms in the same area of her body where she sustained whiplash from the car accident meant that the crash triggered the ALS. But he also testified in his deposition that "there are no neurologists that can designate themselves as experts in determining the causation of ALS" because "we don't know the exact cause" of neurodegenerative diseases.

¶18 In excluding Dr. Sabow's testimony, the District Court focused on his statements that called into question the reliability of his determination that the accident was the proximate cause of Carol's ALS. The District Court noted that the motion to exclude presented "a novel dilemma" because "Dr. Sabow has testified inconsistently that although the cause of ALS is unknown, the cause of Carol's ALS was trauma she sustained during the [a]ccident." The court stated, "Generally, Safeco's motion . . . would be governed by . . . the proposition that the question of whether Dr. Sabow has reliably applied the current principles of the field of neurology to the facts of the case is a

8

question for the jury." But the court then employed a quote from a secondary source stating that, for an expert witness to testify in a negligence action, "the trial court must be satisfied that the witness's testimony is not speculative or guesswork and the expert must state his or her opinion with conviction and belief." 2 Thomas A. Moore, *Evidence in Negligence Cases* § 13.5.1.2 (Practicing Law Institute 2011). The court determined that Dr. Sabow's contradictory statements "undermine[d] his competence to opine and the credibility of his opinion," so he was "not qualified" to testify as an expert witness under M. R. Evid. 702.

¶19   Montana has not adopted any of the recent versions of Federal Rule of Evidence (F. R. Evid.) 702, which sets the standard for the admission of expert testimony in many jurisdictions. As currently written, both F. R. Evid. 702 and M. R. Evid. 702 state that a witness who is "qualified as an expert" may testify if her "knowledge will help the trier of fact to understand the evidence or determine a fact in issue." F. R. Evid. 702(a); M. R. Evid. 702. That is where the Montana rule stops. F. R. Evid. 702, however, further conditions admission on whether, "(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." F. R. Evid. 702(b)-(d).

¶20   According to the Advisory Committee's Notes to the Federal Rules of Evidence, F. R. Evid. 702 incorporated the latter requirements in response to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and *Kumho Tire Co. v.*

9

*Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* emphasized a trial court's "gate-keeping" role and suggested that a trial court should determine whether expert testimony is admissible based on whether the testimony is grounded in "a theory or technique" that "can be (and has been) tested," that has been "subjected to peer review and publication," and that "enjoys 'general acceptance' within the 'relevant scientific community.'" *Kumho Tire*, 526 U.S. at 149, 119 S. Ct. at 1175 (quoting *Daubert*, 509 U.S. at 592-94, 113 S. Ct. at 2796-97). *Kumho Tire* held that the *Daubert* factors apply to essentially all proffered expert testimony. *Kumho Tire*, 526 U.S. at 141, 119 S. Ct. at 1171.

¶21 In contrast to its status in the federal system, *Daubert* is not generally applicable in Montana. In *State v. Moore*, 268 Mont. 20, 885 P.2d 457 (1994), *overruled on other grounds by State v. Gollehon*, 274 Mont. 116, 121, 906 P.2d 697, 701 (1995), we observed that *Daubert* was consistent with our previous precedent "concerning the admission of expert testimony of novel scientific evidence," and we adopted *Daubert* "for the admission of scientific expert testimony." *Moore*, 268 Mont. at 42, 885 P.2d at 471. We later clarified, however, that *Daubert* does not apply to all expert testimony; instead, it applies only to "novel scientific evidence." *State v. Cline*, 275 Mont. 46, 55, 909 P.2d 1171, 1177 (1996); *see Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 69, 289 Mont. 1, 961 P.2d 75 (reasoning that because "the HGN test is not novel scientific evidence," a district court "need not employ" *Daubert* to determine the admissibility of the test results).

¶22 The District Court purported to apply M. R. Evid. 702 in excluding Dr. Sabow's testimony. Safeco has not argued that Dr. Sabow's testimony is based on novel scientific evidence, and does not suggest that *Daubert* should be invoked to determine its admissibility. Indeed, we have noted that *Daubert* is used to assess whether the expert field is reliable, the first factor in our expert testimony jurisprudence. *Clifford*, ¶¶ 29-30. When the District Court assessed the reliability of the *opinion* that Dr. Sabow offered, it ventured to the third factor, misinterpreting its role. Under M. R. Evid. 702, the District Court needed simply to determine "whether the expert field is reliable" and "whether the expert is qualified," leaving to the jury "whether the qualified expert reliably applied the reliable field to the facts." *Harris*, ¶ 36.

¶23 District courts should "construe liberally the rules of evidence so as to admit all relevant expert testimony." *Beehler*, ¶ 23 (quoting *State v. Damon*, 2005 MT 218, ¶ 17, 328 Mont. 276, 119 P.3d 1194). Our standard recognizes that admissible expert evidence should come in, even if that evidence may be characterized as "shaky." The expert's testimony then is open for attack through "the traditional and appropriate" methods: "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Clifford*, ¶ 28 (quoting *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798).

¶24 Safeco attempts to save the District Court's ruling by focusing on the second factor. Safeco argues that Dr. Sabow is not an expert in the field and is not qualified to render the opinion to which he intends to testify. Safeco defines the field as causation of

11

ALS. *Beehler* involved a similar argument. The issue in that case was whether a radiologist's failure to wear a mask while performing a myelogram negligently caused Katherine Beehler's spinal meningitis and subsequent death. *Beehler*, ¶ 4. The trial court excluded testimony from a doctor who was an expert in infection prevention on the ground that he was not an expert in the fields of radiology and myelograms. *Beehler*, ¶ 23. We rejected such a narrow definition of the relevant field, instead recognizing that there was a sufficient "intersection" between the field in which the doctor was qualified and the subject of the claim. *Beehler*, ¶ 27.

¶25 A "field" of expertise is "an area, category, or division wherein a particular activity or pursuit is carried out." *Webster's Third New International Dictionary* 845 (Philip B. Gove ed., 1961). Our standard for expert testimony contemplates that an expert's field will encompass the particular area about which he or she will testify; but the field is not coextensive with its application to the particular facts of the case. For example, in *Harris*, the expert was a pathologist. *Harris*, ¶ 37. His testimony, challenged on appeal, was that the plaintiff's "particular cancer would be invisible on x-ray and that it had been present for ten years prior to [her diagnosis]." *Harris*, ¶ 14. Noting that "[p]athology is a recognized field of scientific study," we pointed to the expert's significant "knowledge and experience in the study of breast cancer, including how it develops, how it is detected and how it is treated." *Harris*, ¶ 37. We concluded that whether the expert "gathered and examined sufficient facts, and correctly applied the

12

facts to reach his opinions, was a question for the jury to decide after cross-examination, presentation of contrary evidence, and application of the law." *Harris*, ¶ 37.

¶26 Dr. Sabow is a neurologist. He has specific expertise in ALS, a neurological disease. Dr. Sabow testified that he has evaluated ALS as much as "probably the top twenty or thirty neurologists in the entire United States," and that he falls within "the upper neurologic group that knows more about [the] caus[e] and effect of ALS than probably 90 percent of neurologists." The issue in dispute is whether the car crash caused Carol's ALS. Based on his expertise in the relevant field of neurology, Dr. Sabow has opined on the neurological relationship between Carol's traumatic injury and her ALS; that is the application of the principles of neurology to the facts in the case. Safeco's attempt to render Dr. Sabow unqualified by defining the relevant field as the specific causation of ALS is unavailing. To undermine the weight of his opinions at trial, Safeco may cross-examine Dr. Sabow regarding his admission that the exact cause of ALS is unknown, but that admission does not render Dr. Sabow's testimony inadmissible under M. R. Evid. 702. *See also Norris v. Fritz*, 2012 MT 27, ¶ 46, 364 Mont. 63, 270 P.3d 79 (holding that an expert's inability to explain why a medical condition occurs did not prevent him from "possessing expertise on the necessary medical treatment when the condition occurs," and limits of his expertise were instead a proper subject for cross-examination).

¶27 *2. Whether the District Court abused its discretion by excluding the causation testimony of Dr. Jimmeh-Fletcher.*

13

¶28 Upon Safeco's motion, the District Court excluded the testimony of Dr. Jimmeh-Fletcher as to causation. Dr. Jimmeh-Fletcher is a neurologist who offered Carol a second opinion confirming her ALS diagnosis. By agreement, the parties perpetuated Dr. Jimmeh-Fletcher's testimony for trial through deposition. In her deposition, Dr. Jimmeh-Fletcher consistently spoke about trauma as a "risk factor" that "can certainly contribute" to neurodegeneration. She agreed, however, that "no medical literature has established that ALS is caused by trauma," and she agreed that she would not have told Carol that the 2009 car accident caused her ALS. The District Court excluded Dr. Jimmeh-Fletcher's testimony on the cause of Carol's ALS after determining that Dr. Jimmeh-Fletcher did not testify with the requisite level of certainty that the car accident caused Carol's ALS.

¶29 "[E]xpert testimony is required when the issue presented is sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence." *Hinkle ex rel. Hinkle v. Shepherd Sch. Dist. No. 37*, 2004 MT 175, ¶ 35, 322 Mont. 80, 93 P.3d 1239. In cases in which expert medical testimony is required to establish a necessary element of a claim, we have held that the expert must testify with a "reasonable medical certainty." *Estate of Wilson v. Addison*, 2011 MT 179, ¶ 18, 361 Mont. 269, 258 P.3d 410 (quoting *Dallas v. Burlington N., Inc.*, 212 Mont. 514, 522-23, 689 P.3d 273, 277 (1984)). For instance, in *Hinkle*, it was necessary for the plaintiff to produce expert testimony on how alleged torts caused him to develop a number of ailments. *Hinkle*, ¶ 35. The plaintiff sought to meet

14

his burden by producing the testimony of a doctor who testified that the torts "could have had something to do with" the subsequent ailments. *Hinkle*, ¶ 38 (emphasis removed). We upheld the exclusion of this testimony and the entry of summary judgment that the exclusion necessitated. *Hinkle*, ¶ 38. "A medical expert's opinion is admissible if it is based on an opinion that it is 'more likely than not' that the alleged wrongdoing caused the plaintiff's injury." *Hinkle*, ¶ 36 (quoting *Butler*, ¶ 13). *See also Dallas*, 212 Mont. at 523, 689 P.2d at 277 ("We are striving for . . . a probability rather than a possibility.").

¶30 Dr. Jimmeh-Fletcher did not testify—either explicitly or implicitly—that it is more likely than not that the car crash caused Carol's ALS. The closest Dr. Jimmeh-Fletcher came to so testifying was when she was asked a hypothetical question about whether a car crash similar to the one Carol experienced "can result in trauma that affects the neurons" in the bulbar region of the brain where Carol developed ALS. Dr. Jimmeh-Fletcher testified that it could. Under *Hinkle*, the District Court correctly determined that this "could have" testimony, *see Hinkle*, ¶ 38, was not sufficient for Dr. Jimmeh-Fletcher to testify on the car accident's causation of Carol's ALS.

¶31 The District Court did not purport to exclude Dr. Jimmeh-Fletcher's testimony for all purposes, however, and neither do we. Safeco has signaled its plans to impeach Dr. Sabow's credibility on the stand on the ground that his opinion on the link between trauma and ALS is not supported by science and is outside the mainstream of the scientific community. Dr. Jimmeh-Fletcher testified with certainty on how current studies show a link between trauma and neurodegeneration ("the medical opinion within

15

the neurology community [is] that trauma can contribute to nerve degeneration"). The District Court retains discretion to allow Dr. Jimmeh-Fletcher's testimony in rebuttal, if appropriate.

## CONCLUSION

¶32 We affirm the District Court's ruling barring McClue from using Dr. Jimmeh-Fletcher's testimony to establish causation in this case. We reverse the District Court's ruling that Dr. Sabow is not qualified to present expert testimony in the trial of this case. The District Court entered summary judgment based on the lack of any admissible expert evidence establishing causation. Reviewing the entry of summary judgment de novo and viewing the admissible evidence in the light most favorable to McClue, we conclude that the entry of summary judgment was error. We reverse and remand for further proceedings.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE