FILED

January 12 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0123

DA 15-0123

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 10

SHELBY CLEVELAND,

        Plaintiff and Appellant,

   v.

JANICE WARD,

        Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                     In and For the County of Lewis and Clark, Cause No. CDV-2012-984
                     Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Brian J. Miller, Morrison, Sherwood, Wilson & Deola, PLLP;
                Helena, Montana

        For Appellee:

                Patrick M. Sullivan, Poore, Roth & Robinson, P.C.; Butte, Montana

                         Submitted on Briefs:  October 14, 2015
                                 Decided:  January 12, 2016

Filed:

                                                Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Shelby Cleveland appeals several rulings by the First Judicial District Court, Lewis and Clark County, excluding trial testimony by Cleveland's physical therapist and treating physician; directing a defense verdict on Cleveland's claim that her rotator cuff tear and arthritis were caused by a vehicle collision; and ruling that Cleveland may not recover damages incurred by her business, Shelby House, Inc.  We affirm.

¶2     We restate and address the issues on appeal as follows:

1. *Whether the District Court abused its discretion by excluding trial testimony of Cleveland's treating physician, Dr. Phillip Steele.*

2. *Whether the District Court abused its discretion by excluding trial testimony of Cleveland's physical therapist, Anne Ripley.*

3. *Whether the District Court erred in granting a directed verdict on Cleveland's claim that her rotator cuff tear and shoulder arthritis were caused by the collision.*

4. *Whether the District Court erred in concluding that Cleveland could not recover damages incurred by Shelby House.*

### PROCEDURAL AND FACTUAL BACKGROUND

¶3     On June 1, 2012, Cleveland was involved in a vehicle collision with another driver, Janice Ward.  Cleveland was stopped in traffic when Ward struck her vehicle from behind and pushed it into the vehicle in front of Cleveland.  The impact totaled Cleveland's vehicle.  Ward admitted that she was negligent, and Cleveland filed suit for damages.  Cleveland contended that she suffered physical injuries from the collision and sought, among other items, damages for emotional distress, past medical costs, and "business loss/lost income."

2

¶4     On November 5, 2014, Ward filed pre-trial motions in limine. Ward sought to exclude reference to any damages suffered by Shelby House, and to exclude any testimony by Dr. Steele that Cleveland suffered a rotator cuff injury as a result of the collision. On January 21, 2015, the District Court granted Ward's motions on those two issues.[1] The District Court concluded that, because Shelby House was not a named party, any discussion of damages it incurred was not relevant. The District Court further concluded that Dr. Steele could not testify as to the cause of Cleveland's rotator cuff tear because he "clearly avoided giving an opinion" on causation in a September 2014 deposition. In reaching this conclusion, the District Court relied on the following testimony from Dr. Steele in that deposition:

> My belief is that [Cleveland] had pre-existing shoulder pathology that to my knowledge had never bothered her. Its relationship to the automobile accident would be purely speculative on my part. I don't have a firm way to confirm or deny it. I think certainly the automobile accident could have exacerbated it; the automobile accident could have nothing to do with it. I don't really know at this point in time.

¶5     On January 6, 2015, the parties took Dr. Steele's perpetuation deposition. On January 23, 2015, Ward filed objections to certain parts of Dr. Steele's perpetuation deposition testimony based on the District Court's decision that Dr. Steele could not testify about the cause of Cleveland's rotator cuff tear. On January 27, 2015, the District Court issued an order sustaining several of Ward's objections. The court concluded that Dr. Steele's testimony could not be "offered for the purpose of establishing the cause of the rotator cuff injury, as his testimony did not include medical opinions based on the

---

[1] The District Court also granted and denied Ward's motions on other issues not appealed.

required probability that the collision 'more likely than not' caused the injury," quoting *Beehler v. E. Radiological Assocs., P.C.*, 2012 MT 260, ¶ 35, 367 Mont. 21, 289 P.3d 131.

¶6 A three-day jury trial commenced on February 2, 2015. During the trial, Cleveland called her physical therapist, Anne Ripley, to testify. Outside of the presence of the jury, the District Court asked Ripley several questions to clarify the scope of her testimony. When asked whether she could diagnose the cause of Cleveland's rotator cuff tear, Ripley responded: "I can't say that the accident caused the rotator cuff tear. But I can say function was normal before the accident and after the accident she had all of this change." The District Court therefore prohibited Ripley from offering "testimony as to medical causation" of Cleveland's rotator cuff tear. Cleveland's attorney then made an offer of proof by questioning Ripley.

¶7 At the close of evidence, Ward moved for a directed verdict on Cleveland's claim that her rotator cuff tear and shoulder injuries were caused by the collision. Ward's attorney argued that Cleveland must have "medical expert testimony to establish the medical causation link" between Cleveland's shoulder injuries and the collision, and that "[t]he jury can't speculate on something like that." The District Court granted Ward's motion for a directed verdict, preventing Cleveland from arguing that her rotator cuff tear or shoulder arthritis were caused by the collision.

¶8 On February 4, 2015, the jury returned a verdict for Cleveland in the amount of $10,534. On February 17, 2015, the District Court entered judgment for Cleveland in the amount of $3,056.99, after factoring in offsets for previously-made payments. Cleveland

4

appeals, contending that the District Court abused its discretion in limiting the scope of Dr. Steele's testimony, granting five of Ward's objections to Dr. Steele's testimony, and limiting the scope of Ripley's trial testimony. Cleveland further contends that the District Court erred by granting a directed verdict on Cleveland's shoulder injury claim and ruling that Cleveland may not recover damages incurred by Shelby House.

## STANDARDS OF REVIEW

¶9 We review for abuse of discretion a district court's evidentiary rulings and determination whether a witness is qualified as an expert to testify. *Harris v. Hanson*, 2009 MT 13, ¶ 18, 349 Mont. 29, 201 P.3d 151; *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561. District courts have broad discretion to control the admission of evidence at trial. *Seltzer*, ¶ 65. A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Seltzer*, ¶ 65.

¶10 If an appellant demonstrates that a district court has abused its discretion in rendering an evidentiary ruling, we determine whether that abuse of discretion constitutes a reversible error. *Seltzer*, ¶ 65. No reversible error occurs unless a substantial right of the appellant is affected or the evidence in question could have affected the outcome of the trial. *Seltzer*, ¶ 65.

¶11 Whether a directed verdict should be granted or denied is a question of law, which we review de novo. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727. In reviewing a motion for a directed verdict, we determine "whether the non-moving party could prevail upon any view of the evidence including the legitimate

inferences to be drawn therefrom." *Cameron v. Mercer*, 1998 MT 134, ¶ 8, 289 Mont. 172, 960 P.2d 302. Courts must "exercise the greatest self-restraint in interfering with the constitutionally-mandated process of jury decision. Thus, unless there is a complete absence of any credible evidence in support of the verdict, a motion for a directed verdict is not properly granted." *Cameron*, ¶ 8 (internal citations omitted).

**DISCUSSION**

¶12 *1. Whether the District Court abused its discretion by excluding trial testimony of Cleveland's treating physician, Dr. Phillip Steele.*

¶13 Cleveland appeals the District Court's January 21, 2015 order that Dr. Steele could not testify on the cause of Cleveland's rotator cuff injury and its January 27, 2015 order excluding several specific portions of Dr. Steele's perpetuation deposition testimony. M. R. Evid. 702 permits "a witness qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." An expert's testimony is reliable if: (1) the expert field is reliable, (2) the expert is qualified, and (3) the qualified expert reliably applied the reliable field to the facts. *Harris*, ¶ 36 (citing M. R. Evid. 702). The first two factors are determined by the district court. By contrast, "[t]he question whether a qualified expert reliably applied the principles of th[e] reliable field to the facts of the case is for the finder of fact." *Harris*, ¶ 36. However, when expert medical testimony is required to establish a necessary element of a claim, "the expert must testify with a 'reasonable medical certainty.'" *McClue v. Safeco Ins. Co.*, 2015 MT 222, ¶ 29,

6

380 Mont. 204, 354 P.3d 604. Under this standard, "[a] medical expert's opinion is admissible if it is based on an opinion that it is 'more likely than not' that the alleged wrongdoing caused the plaintiff's injury." *McClue*, ¶ 29 (quoting *Hinkle ex rel. Hinkle v. Shepherd Sch. Dist. # 37*, 2004 MT 175, ¶ 36, 322 Mont. 80, 93 P.3d 1239).

¶14 Neither party disputes that Dr. Steele's field is reliable or that he is qualified as an expert. The parties dispute the scope of Dr. Steele's testimony and the District Court's exclusion of five portions of it. In its January 21, 2015 order, the District Court determined that Dr. Steele "cannot be offered for the purpose of establishing causation" because he would not say that the collision "more likely than not" caused Cleveland's rotator cuff tear. The District Court based its decision on Dr. Steele's September 2014 deposition testimony that it would be "purely speculative" for him to opine on the relationship between Cleveland's rotator cuff tear and the collision. The District Court did not abuse its discretion by prohibiting Dr. Steele from testifying that the collision caused Cleveland's rotator cuff tear because Dr. Steele clearly indicated that he could give no such opinion.

¶15 The District Court relied on its decision that Dr. Steele could not testify on causation to exclude several specific portions of Dr. Steele's perpetuation deposition testimony. Cleveland appeals five of these exclusions, summarized below. Cleveland contends that the excluded evidence was offered to explain factual issues "related to observations and conclusions Dr. Steele made in the course of his treatment" and should have gone to the jury.

¶16 Though district courts have broad discretion to control the admission of evidence at trial, we have long recognized that it is "the sole province of the jury to determine questions of fact." *Murray v. Heinze*, 17 Mont. 353, 364, 42 P. 1057, 1061 (1895). As such, courts should liberally construe the rules of evidence to admit all relevant expert testimony, even if that evidence may be characterized as "shaky." *McClue*, ¶ 23. "The expert's testimony then is open for attack through 'the traditional and appropriate' methods: 'vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *McClue*, ¶ 23 (quoting *State v. Clifford*, 2005 MT 219, ¶ 28, 328 Mont. 300, 121 P.3d 489).

¶17 In the first excluded portion of his testimony, Dr. Steele responded to a request for clarification of his treatment note that a vehicle collision "can be" a contributor to Cleveland's symptoms. Dr. Steele did not opine whether the collision caused Cleveland's rotator cuff tear. Rather, he testified about the medical difficulty of determining the "pain generator" of shoulder and neck pain. This testimony was factual; thus, it was admissible. Although this testimony should have been admitted, Dr. Steele made a similar statement using nearly the same language earlier in his deposition. He testified:

> [O]ne of the big conundrums of musculoskeletal care is all the nerve roots from the neck go there through the shoulder . . . so sometimes shoulder pain is neck pain and sometimes neck pain is shoulder pain. . . . It's an extremely challenging area to determine what's coming from where.

8

The District Court did not exclude that testimony and, thus, there is not a reasonable possibility that the excluded evidence contributed to the jury's verdict. The District Court's exclusion of Dr. Steele's testimony was not reversible error.

¶18     The second and third excluded portions of Dr. Steele's testimony directly pertain to the cause of Cleveland's rotator cuff tear. In the second excluded portion, Dr. Steele responded to a question regarding whether Cleveland had a rotator cuff tear in 2001 by refusing to speculate as to when Cleveland's rotator cuff tear occurred. In the third excluded portion, during a discussion about whether Cleveland had a rotator cuff tear prior to the collision, Dr. Steele testified that a person typically would show symptoms of a tear. In the fourth excluded portion, Dr. Steele discussed the various treatment options for Cleveland's rotator cuff tear.

¶19     There is no dispute that Cleveland had a rotator cuff tear. However, as discussed below in our resolution of Issue 3, Cleveland never produced expert testimony that her rotator cuff tear was "more likely than not" caused by the collision, and the jury ultimately did not consider that claim because of the District Court's directed verdict. As further discussed in our resolution of Issue 3, Cleveland never argued that her rotator cuff tear, even if pre-existing, was aggravated or rendered symptomatic by the collision. In the absence of either medical evidence supporting Cleveland's causation theory or an argument that the collision aggravated a pre-existing condition, the District Court did not err by excluding testimony about the cause of Cleveland's rotator cuff tear or treatment for that injury.

¶20 In the fifth excluded portion of his testimony, Dr. Steele testified that it was not possible to apportion Cleveland's symptoms between the vehicle collision and any pre-existing conditions. Cleveland contends on appeal that this testimony was admissible to rebut Ward's contention that Cleveland's symptoms were "100% attributable to a pre-existing rotator cuff tear." However, this was not Ward's contention. The only testimony in this regard came when Cleveland's attorney asked Ward's medical expert, Dr. Heid, whether Cleveland's limitations were "completely 100 percent unrelated to the motor vehicle accident." Dr. Heid responded that the question was misleading because it was unclear how much of Cleveland's limitations were due to her neck injury versus her shoulder injury. Since Ward never attempted to apportion potential causes of Cleveland's injuries to the jury, Dr. Steele's testimony that it was not possible to apportion Cleveland's symptoms was not in rebuttal of anything. The District Court did not err in excluding it.

¶21 *2. Whether the District Court abused its discretion by excluding trial testimony of Cleveland's physical therapist, Anne Ripley.*

¶22 Cleveland next contends that the District Court abused its discretion by barring Ripley from offering medical causation testimony. At trial and outside of the presence of the jury, the District Court questioned Ripley about the scope of her testimony. When asked by the court whether she could determine the cause of a rotator cuff tear, Ripley responded: "I can't say that the accident caused the rotator cuff tear. But I can say function was normal before the accident and after the accident she had all of this change." Based in part on this statement, the District Court decided that it was "not going to allow

[Ripley] to offer testimony as to medical causation." The District Court further explained that Cleveland had not produced required medical expert testimony that, "to a reasonable degree of medical certainty[,] . . . this accident caused her rotator cuff tear." On appeal, Cleveland contends that the District Court reached this decision arbitrarily by not first allowing Cleveland an opportunity to make an offer of proof. Cleveland further contends that the District Court should have considered Ripley's qualifications to determine whether she was competent to testify under M. R. Evid. 702.

¶23 Regardless of whether Ripley was qualified as a physical therapist to testify on medical causation, she clearly indicated that she could not opine that the collision caused Cleveland's rotator cuff tear. The District Court did not abuse its discretion in determining that Ripley could not testify that the collision "more likely than not" caused Cleveland's rotator cuff tear.

¶24 Moreover, it bears noting that the District Court did not exclude Ripley's testimony regarding Cleveland's general pain and limitations in her shoulder. Outside of the presence of the jury, Ripley told the court that she could testify "about the change in function that I saw after the motor vehicle accident in [Cleveland]. I can talk about her pain . . . ." The District Court never said that Ripley could not provide this information to the jury. In fact, before the District Court made its ruling, and while Ripley was still in front of the jury, Ripley extensively testified about Cleveland's shoulder injuries, functional limitations, and pain. The District Court did not exclude any of this testimony. The District Court's ruling that Ripley could not testify that the collision caused Cleveland's rotator cuff tear did not prevent Cleveland's attorney from asking Ripley

11

further questions about her treatment of Cleveland's injuries. Nor did the Court's ruling prevent Cleveland's attorney from asking whether Ripley believed the collision aggravated a pre-existing injury or prevent Ripley from testifying about Cleveland's pain and limitations before and after the accident.

¶25 *3. Whether the District Court erred in granting a directed verdict on Cleveland's claim that her rotator cuff tear and shoulder arthritis were caused by the collision.*

¶26 "A directed verdict . . . is not proper if reasonable persons could differ regarding the conclusions which could be drawn from the evidence, and a directed verdict is proper only in the complete absence of any evidence to warrant submission to the jury." *King v. Zimmerman*, 266 Mont. 54, 60, 878 P.2d 895, 899 (1994). The District Court granted Ward's motion for a directed verdict "as to the argument for the rotator cuff or arthritic condition" because it concluded: "There is no medical causation, expert testimony, that says that [Cleveland's] rotator cuff arthritic condition in her shoulder is related to the accident. . . . [N]obody has—and we have to have an expert—has said it was caused by the motor vehicle accident." On appeal, Cleveland contends that the District Court erred in reaching this decision because the jury could infer from "substantial credible evidence" that the collision was the "apparent cause" of Cleveland's "on-going shoulder pain and limitations."

¶27 Regarding its directed verdict, the District Court instructed the jury:

> I have further concluded at the conclusion of the evidence that there is insufficient evidence to establish that the motor vehicle accident caused the plaintiff's rotator cuff tear and arthritis in the right shoulder. So you are not to be awarding damages for the rotator cuff tear or the arthritis in her right shoulder.

12

Nowhere in its ruling on Ward's motion for a directed verdict or explanation of that ruling to the jury did the District Court prevent Cleveland from arguing that the collision aggravated a pre-existing condition or caused her pain and limitations.

¶28 On appeal, Cleveland conflates the District Court's directed verdict on the issue of whether the accident caused her objectively-diagnosed rotator cuff tear and shoulder arthritis—an argument that did not have the required medical testimony to support it— with the issue of whether the accident aggravated those injuries, irrespective of their origin—an argument that was not made to the District Court. As a general rule, "this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory." *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100 (citing *Day v. Payne*, 280 Mont. 273, 276, 929 P.2d 864, 866 (1996)). This is because "it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Easley*, ¶ 15 (quoting *Day*, 280 Mont. at 276-77, 929 P.2d at 866). We will not fault the District Court for failing to rule on Cleveland's claim that the collision aggravated a pre-existing injury or caused her pain because the District Court never was given the opportunity to consider that issue.

¶29 *4. Whether the District Court erred in concluding that Cleveland could not recover damages incurred by Shelby House.*

¶30 In its January 21, 2015 order on Ward's motions in limine, the District Court concluded that Cleveland could not seek damages for "business loss/lost income" on behalf of Shelby House because Shelby House was not a named party in the lawsuit.

13

Cleveland claims that the District Court erred in excluding evidence of an alleged increase in payroll expenses incurred by Shelby House, and that she has standing to assert a claim for these losses because they filter through to her as the sole shareholder.

¶31　"A corporation has a separate and distinct entity from its stockholders." *First Sec. Bank v. Gary*, 245 Mont. 394, 402, 798 P.2d 523, 528 (1990). As the District Court recognized, "[g]enerally, a shareholder may not bring a claim that belongs to their corporation." *Weaver v. Advanced Refrigeration*, 2011 MT 174, ¶ 14, 361 Mont. 233, 257 P.3d 378 (citing *Gullett v. Van Dyke Constr. Co.*, 2005 MT 105, ¶ 14, 327 Mont. 30, 111 P.3d 220). This includes claims of profits lost to the corporation. *Gullet*, ¶¶ 14, 17. Cleveland is bound by her pleadings, *see Weaver*, ¶ 15, and she does not allege personal loss of income due to her injuries. Any claim against Ward for "business loss/lost income" belongs to Shelby House, not to Cleveland personally. *See Weaver*, ¶ 15. The District Court did not err in concluding that Cleveland could not recover damages incurred by Shelby House.

## CONCLUSION

¶32　The District Court did not abuse its discretion in determining that Dr. Steele may not testify that the vehicle collision caused Cleveland's torn rotator cuff and shoulder injuries. Any abuse of discretion in the court's exclusion of the five disputed portions of Dr. Steele's testimony was not reversible error. The District Court did not abuse its discretion in concluding that Ripley may not testify that the collision caused Cleveland's rotator cuff tear or shoulder arthritis. Because Cleveland produced no expert testimony that her rotator cuff tear or shoulder arthritis more likely than not were caused by the

14

collision, the District Court did not err in granting a directed verdict on that claim.

Finally, the District Court did not err in concluding that Cleveland may not recover damages incurred by Shelby House. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice Patricia Cotter, concurring.

¶33 I concur in the outcome reached by the Court, but not in all that is said in the Opinion. At ¶ 19, in addressing the exclusion of Dr. Steele's testimony, the Court states that Cleveland never argued that her rotator cuff tear was aggravated or rendered symptomatic by the collision. However, as the Court notes at ¶ 4, Dr. Steele had already opined in his deposition that "the automobile accident could have exacerbated it; the automobile accident could have nothing to do with it. I really don't know at this point." Thus, Dr. Steele was on record prior to trial that he would not offer an opinion as to aggravation. Cleveland's counsel did inquire of the defendant's expert orthopedic surgeon Dr. Heid whether the motor vehicle accident caused any aggravation of a pre-existing injury, and it was her opinion that it did not.

¶34 I also disagree with the Court's contention at ¶ 24 that the District Court's ruling did not prevent Cleveland's attorney from asking Ripley whether the collision aggravated

15

a pre-existing injury. As we note in ¶ 22, the District Court ruled that it would not allow Ripley to offer testimony as to medical causation. A witness testifying that an accident aggravated an injury is clearly testifying as to causation for an aggravated injury; therefore, this opinion too would likely have been excluded. For the same reason, I disagree with the Court's incorrect assertion at ¶ 27 that nothing prevented Cleveland from arguing that the collision aggravated a pre-existing condition. As noted, Steele refused to offer an opinion on aggravation, Heid denied it occurred, and Ripley was precluded by court order from offering a causation opinion. Without expert testimony to support a claim that the accident aggravated a pre-existing injury, Cleveland could not present this argument to the jury.

¶35 With these caveats, I concur in the Court's Opinion.


/S/ PATRICIA COTTER